1  YURI MIKULKA (SBN 185926)
     ymikulka@ztllp.com
2  LINDEN BIERMAN-LYTLE (SBN 240268)
     llytle@ztllp.com
3  **ZUBER & TAILLIEU LLP**
   10866 Wilshire Boulevard, Suite 300
4  Los Angeles, California  90024
   Telephone: (310) 807-9700
5  Facsimile: (310) 807-9701

6  Attorneys for Defendant Lincoln Provision, Inc. USA

7

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  Million (Far East) Ltd., a foreign
    company,                                  CASE NO. CV09-7168 R (AGRx)
12
              Plaintiff,                       **NOTICE OF MOTION AND
13                                             MOTION OF THIRD-PARTY
         v.                                    PLAINTIFF LINCOLN PROVISION
14                                             INC. USA FOR DEFAULT
    Lincoln Provision Inc. USA, a             JUDGMENT AGAINST THIRD-
15  corporation and DOES 1 through 100,       PARTY DEFENDANTS;
    inclusive,                                MEMORANDUM OF POINTS AND
16                                             AUTHORITIES IN SUPPORT
              Defendant.                       THEREOF**
17  _____
18  Lincoln Provision Inc. USA,              Date:    July 19, 2010
                                             Time:    10:00 a.m.
19            Third Party Plaintiff,          Judge:   Hon. Manuel L. Real
                                             Place:   312 North Spring Street
20       v.                                            Courtroom 8
                                                       Los Angeles, CA 90012
21  Philip Wolfstein, Viteck International
    Corp., and ROES 1 through 50,            Discovery Cut-Off: April 9, 2010
22  inclusive,                                Trial Date: May 18, 2010
23            Third Party Defendants.
24
25
26
27
28  1388-1001  126908.1

1  **TO THIRD-PARTY DEFENDANTS:**

2      **PLEASE TAKE NOTICE THAT** on Monday July 19, 2010 at 10:00 a.m. or

3  as soon thereafter as the matter may be heard, in courtroom 8 of the Hon. Manuel L.

4  Real, located at 312 North Spring Street, Los Angeles, California 90012, Third-

5  Party Plaintiff Lincoln Provision Inc. USA ("Third-Party Plaintiff" or "Lincoln")

6  will apply to the Court for default judgment against Third-Party Defendants Philip

7  Wolfstein and Viteck International Corp. (collectively, "Third-Party Defendants").

8      This Motion is based upon Rule 55 of the Federal Rules of Civil Procedure

9  and Third-Party Defendants' failure to respond to the Third Party Complaint.

10  Failure to enter default judgment would leave Lincoln without remedy and would

11  unfairly reward Third-Party Defendants for their decision to not defend this action.

12      Lincoln's Motion will be based upon this Notice of Motion and Motion, the

13  Memorandum of Law, and Declarations filed concurrently herewith and in support

14  hereof, the papers and pleadings on file in this action, and such further evidence as

15  may be introduced by Third-Party Plaintiff at the hearing, if any, on this Motion.

16      Third-Party Plaintiff seeks damages against Third-Party Defendants in the

17  amount of $1,145,275.91 and an award for costs, prejudgment interest, and post-

18  judgment interest.

19

20  Dated: May 17, 2010                 Respectfully submitted:

21                                     **ZUBER & TAILLIEU LLP**

22                                     YURI MIKULKA

23                                     LINDEN BIERMAN-LYTLE

24

25                    By: _____

26                       Attorneys for Defendant Lincoln Provision,

27                       Inc. USA

28    1388-1001   126908.1               -1-

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 2

II.  FACTUAL AND PROCEDURAL HISTORY ........................................... 3

    A.   Third-Party Defendants' Breach of Contract and Fraudulent Conduct .......................................................................................... 3

    B.   Third-Party Defendants' Failure to Participate in the Action ................ 5

III. ARGUMENT ............................................................................................ 6

    A.   The Entry of Judgment Is Appropriate .................................................. 6

    B.   The Factual Allegations of the Complaint Are Deemed Conclusively Established .................................................................... 7

    C.   Lincoln is Entitled to Damages Under the California Uniform Commercial Code ............................................................................... 9

        1.   Lincoln Is Entitled to Recover Difference between Market Price and Contract Price .................................................. 10

        2.   Lincoln Is Entitled to Recover Incidental Damages .................. 10

        3.   Lincoln Is Entitled to Consequential Damages .......................... 11

        4.   Lincoln is Entitled to Recover Monies Owed To Million ......... 11

        5.   Lincoln is Entitled to Lost Profits ............................................. 12

        6.   Lincoln is Entitled to Damages for Anticipated Lost Profits, Lost Opportunity, and Loss of Good Will .................... 13

    D.   In the Alternative, Lincoln is Entitled to Damages for Fraud and Negligent Misrepresentation ..................................................... 16

    E.   Lincoln is Entitled to Prejudgment Interest ......................................... 17

    F.   Lincoln is Entitled to Post-Judgment Interest ..................................... 17

    G.   Lincoln is Entitled to Costs ................................................................ 18

    H.   Lincoln's Recovery of Damages, Interest and Costs ........................... 18

IV.  CONCLUSION ........................................................................................ 19

-i-

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3A Entertainment Ltd. v. Constant Entertainment, Inc.*, 2009 WL 248261*5
(N.D.Cal. January 30, 2009) .......................................................................... 16

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App. 4th 798, 806-07, 66
Cal.Rptr.3d 543 (2007) ...................................................................................... 7

*Cole v. Asurion Corp.*, 2010 WL 1640889 (C.D. Cal. April 19, 2010) ...................... 7

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) .............................. 7

*La Flower v. Merrill*, 28 F.2d 784, 787 (D.C. Cal. 1928) ........................................ 16

*Leung v. Sumitomo Corp. of America*, 2010 WL 816642 (N.D. Cal. March 9,
2010) ............................................................................................................... 17

*Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 710-711
(9th Cir. 1990) ............................................................................................... 11

*Milgard Tempering, Inc.*, 902 F.2d at 710-711 ........................................................ 13

*R.B. Matthews*, at 275 ............................................................................................. 13

*R.B. Matthews, Inc. v. Transamerica Trans-Services, Inc.* 945 F.2d 269, 275
(9th Cir. 1991) ............................................................................................... 11

*Rogerson Aircraft Corp. v. Fairchild Industries, Inc.*, 632 F.Supp. 1494 (C.D.
Cal. 1986) ....................................................................................................... 14

*StreamCast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345 *12 (C.D. Cal.
May 2, 2006) ..................................................................................................... 7

*Western Emulsions, Inc. v. BASF Corp.*, 2007 WL 1839718 *8-9 (C.D. Cal.
January 19, 2007) ............................................................................................. 13

## STATE CASES

*CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 70 Cal.Rptr.3d 667
(2008) ................................................................................................................. 7

*Green Wood Industrial Co.*, 156 Cal.App.4th at 777-778 ....................................... 12

*House Grain Co. v. Finerman & Sons*, 116 Cal.App.2d 485, 494, 495-496, fn.
4, 253 P.2d 1034 (1953) ................................................................................... 12

1388-1001  126908.1

-ii-

NOTICE OF MOTION AND MOTION OF THIRD-PARTY PLAINTIFF LINCOLN PROVISION INC. USA
FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS

*Kerner v. Hughes Tool Co.,* 56 Cal.App.3d 924, 937, 128 Cal.Rptr. 839 (1976).................................................................................................. 13

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.* 34 Cal.4th 960, 968, 102 P.3d 257 (2004)........................................... 13

*Morello v. Growers Grape Products Ass'n,* 82 Cal.App.2d 365, 469, 186 P.2d 463 (1947)................................................................................. 13

*Natural Soda Products Co. v. City of Los Angeles,* 23 Cal.2d 193, 199-200, 143 P.2d 12 (1943)......................................................................... 14

*Newhall Land & Farming Co. v. Hogue-Kellogg Co.,* 56 Cal.App. 90, 95-96, 204 P. 562 (1922)............................................................................. 13

*North American Chemical Co. v. Superior Court,* 59 Cal.App.4th 764, 777 n. 8, 69 Cal.Rptr.2d 466 (1997) .................................................... 11

*North American Chemical Co.,* 59 Cal.App.4th at 777 n. 8 ...................... 13

## STATUTES

28 U.S.C. § 1961(a)............................................................................... 18

Cal. Civ. Code § 3287(b) ....................................................................... 17

Cal. Civ. Code § 1787(2) ....................................................................... 10

Cal. Civ. Code § 1787(3) ....................................................................... 10

Cal. Civ. Code § 3289(b) ....................................................................... 17

Cal. Civ. Code § 3300 ............................................................................ 13

Cal. Civ. Proc. § 1033 ............................................................................ 18

Cal. Civ.Code § 3333 ............................................................................. 16

Cal. U. Com. Code § 2102 ....................................................................... 9

Cal. U. Com. Code § 2105 ....................................................................... 9

Cal. U. Com. Code § 2715(1) ................................................................. 10

Cal. U. Com. Code § 2715(2) .......................................................... 11, 13

Cal. U. Com. Code § 2715(2)(a)............................................................. 11

Cal. U. Com. Code § 2723(3) ................................................................. 10

Cal. U. Com. Code §2713 ........................................................................ 9

NOTICE OF MOTION AND MOTION OF THIRD-PARTY PLAINTIFF LINCOLN PROVISION INC. USA
FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS

Civil Code § 3300 ............................................................................................ 13

Restatement (Second) of Torts §433A(1) ......................................................... 18

Soldiers' and Sailors' Civil Relief Act of 1940 .............................................. 7

**RULES**

Rule 55(a) ........................................................................................................... 6

1388-1001  126908.1

-iv-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Third Party Complaint arises from the breach of a meat sales contract by Third-Party Defendants Philip Wolfstein ("Wolfstein") and Viteck International Corp. ("Viteck") (collectively, "Third-Party Defendants"), which prevented Lincoln Provision Inc. USA ("Third-Party Plaintiff" or "Lincoln") from providing a certain supply of meat to its customer Plaintiff Million (Far East) Ltd. ("Million"). As a result, Million terminated its relationship with Lincoln and filed this lawsuit against Lincoln to recover for the damages arising from the failed meat transaction.

Lincoln is informed and believes that Third-Party Defendants made fraudulent and negligent misrepresentations to induce Lincoln to enter into a contract with Third-Party Defendants and then once Lincoln made a payment to Third-Party Defendants, they refused to release the Beef Ribs to Lincoln in order to directly sell the Beef Ribs to Lincoln's customer for a higher price. As alleged in the Complaint and the Third Party Complaint and demonstrated herein, Third-Party Defendants' breach of contract and in the alternative, fraudulent and negligent misrepresentations, caused the transactions between Lincoln and Million and between Million and its downstream customers to fail. This resulted in significant damages to Lincoln and to Lincoln's customer Million which Lincoln was forced to reimburse.

As set forth herein, as a result of Third-Party Defendants' breach of the parties' contract, and in the alternative, as a result of Third-Party Defendants' intentional and negligent misrepresentations, Lincoln is entitled to recover the following damages from the Third-Party Defendants: (1) the difference between the market price and contract price of $560,000; (2) incidental damages of $275.91; (3) lost profits of $40,000; (4) lost anticipated profits of $420,000; (5) amount to be paid to Million for settling this action of $125,000; (6) costs totaling $16,145.05; (7)

1388-1001  126908.1

-2-

1  prejudgment interest of $299 per day since October 22, 2009; and (8) post-judgment

2  interest at the rate calculated at the date of judgment and until the judgment is paid.

3      Third-Party Defendants' actions, including their blatant disregard of the

4  contract entered into with Lincoln, and the fact that Third-Party Defendants have

5  avoided their obligation to appear before the Court, support a finding that the

6  damages sought by Lincoln is warranted in order to compensate Lincoln for the

7  damages caused by Third-Party Defendants, to serve the public by enforcing the law

8  that a contract is binding upon its parties, and to deter willful and tortuous behavior

9  of Third-Party Defendants.

10      Lincoln respectfully requests this Court to enter a default judgment in the

11  amount requested herein against Third-Party Defendants.

12  **II.    FACTUAL AND PROCEDURAL HISTORY**

13      **A.    Third-Party Defendants' Breach of Contract and Fraudulent**

14          **Conduct**

15      Viteck and Wolfstein are in the business of buying and selling meat in the

16  United States.  (Third Party Complaint, ¶¶ 4-5.)  Lincoln is a company with offices

17  in Chicago and San Francisco and is in the business of, among other things,

18  producing, buying and reselling meat to domestic and foreign companies.

19  (Declaration of Michael Shenson in Support of Lincoln's Motion for Default

20  Judgment Against Third-Party Defendants ("Shenson Decl.") ¶ 2.)  Million is a

21  Hong Kong company in the business of buying meat and reselling meat to

22  companies in Asia and is one of the largest meat importers in Hong Kong.  (Shenson

23  Decl. ¶ 3; Declaration of S.B. Wong in Support of Lincoln's Motion for Default

24  Judgment Against Third-Party Defendants ("Wong Decl.") ¶ 4, Exh. 3.)

25      On or about January 16, 2009, Viteck and Wolfstein, individually and as an

26  agent or representative of Viteck, entered into a contract with Lincoln to sell to

27

28  1388-1001  126908.1                          -3-

1  Lincoln 20 loads (approximately 820,000 lbs.) of "choice" grade short beef ribs

2  ("Beef Ribs") at $1.05 per pound.[1]  (Third Party Complaint, ¶ 8.)

3      In order to induce Lincoln to enter into the contract, Viteck and Wolfstein

4  made representations regarding the delivery terms and quality of the Beef Ribs that

5  were false and which they had no reason to believe were true.  (Third Party

6  Complaint, ¶ 37.)

7      Before the formation of the parties' contract, Lincoln communicated with

8  Wolfstein that Lincoln intended to purchase the Beef Ribs to resell to its customer.

9  (Shenson Decl. ¶ 4.)  Lincoln agreed to sell the Beef Ribs to Million for $1.10 per

10 pound.  (Bierman-Lytle Decl. ¶ 3, Exh 2.)

11     On January 23, 2009, Lincoln paid Viteck $429,000 as agreed upon by

12 Lincoln, Wolfstein, and Viteck.  (Third Party Complaint, ¶ 14.)

13     On January 26, 2009, Mike Shenson of Lincoln traveled to the freezer in

14 Southern California to inspect the Beef Ribs and incurred $275.91 in expenses for

15 traveling to and from the freezer.  (Shenson Decl. ¶ 5, Exh. 1.)

16     On or about January 28, 2009, Lincoln determined that Third-Party

17 Defendants had not released the Beef Ribs to Lincoln in material breach of the

18 parties' contract and requested that they release the product.  (Third Party

19 Complaint, ¶ 15.)  Third-Party Defendants refused.  *Id.*

20     Lincoln is informed and believes that Viteck and Wolfstein never intended to

21 release the Beef Ribs to Lincoln and that they intended instead to usurp Lincoln's

22 business opportunity with Million.  (Third Party Complaint, ¶ 16.)  In fact, shortly

23 after Third-Party Defendants refused to release the Beef Ribs to Lincoln, Wolfstein

24

25 _____

26 [1] On or about January 20, 2009, Wolfstein sent Lincoln Viteck's proforma invoice.  (Declaration of Linden Bierman-Lytle in Support of Lincoln's Motion for ) Default Judgment Against Third-Party Defendants ("Bierman-Lytle Decl.") ¶ 2, Exhibit ("Exh.") 1.

27

28  1388-1001  126908.1                           -4-

1  offered the same Beef Ribs directly to Million for a higher price of $1.35 per pound.

2  (Third Party Complaint, ¶ 17; Wong Decl. ¶ 6, Exh. 5.)

3       When Third-Party Defendants persisted in their refusal to release the Beef

4  Ribs or to return the money to Lincoln, Lincoln was forced to initiate a proceeding

5  with the U.S. Department of Agriculture to secure the funds it paid to Third-Party

6  Defendants.  (Shenson Decl. ¶ 6.)

7       Despite Lincoln's diligent efforts to cover and find substitute beef ribs to sell

8  to Million, Lincoln was unable to locate sufficient supply to provide any beef ribs to

9  Million.  (Bierman-Lytle Decl. ¶¶ 4 and 5, Exhs. 3-4; Shenson Decl. ¶ 8.)

10       As a direct and proximate cause of Third-Party Defendants'

11  misrepresentations and refusal to perform under the contract, Lincoln was unable to

12  deliver the Beef Ribs to its customer Million, which in turn was forced to breach its

13  sales contracts with its downstream customers.

14       On July 28, 2009, Million filed this action against Lincoln for its failure to

15  provide the Beef Ribs and sought damages from Lincoln for breach of contract and

16  implied contractual indemnity ("Complaint").

17       In April 2010, Million and Lincoln reached a settlement agreement to resolve

18  Million's claims against Lincoln whereby Lincoln agreed to pay Million a sum of

19  $125,000 for Million's damages resulting from the failed Beef Rib sale.  (Bierman-

20  Lytle Decl. ¶ 6.)

21      **B.**    <u>**Third-Party Defendants' Failure to Participate in the Action**</u>

22       On October 22, 2009, Lincoln filed a Third Party Complaint for breach of

23  contract, breach of implied covenant of good faith and fair dealing, fraud and

24  negligent misrepresentation against Wolfstein and Viteck.  (Dkt. 9.)

25       On November 8, 2009, the Summons and Third-Party Complaint were served

26  upon Viteck's agent for service of process.  (Dkt. 12.)  Viteck failed to answer, or

27  otherwise respond, to the Third Party Complaint.  (Bierman-Lytle Decl. ¶ 7.)  From

28  

-5-

1  November 2009 through February 2010, Lincoln diligently attempted to serve
2  Wolfstein numerous times, but was unable to locate Wolfstein to serve him in
3  accordance with Federal Rule of Civil Procedure 4(e)(2). (Dkt. 20.) On February
4  11, 2010, Lincoln filed an Ex Parte Application to Serve Wolfstein by Publication
5  and to Extend the Time for Service of Process ("Ex Parte Application"), which this
6  Court granted.[2] (Dkt. 20, 22.) On March 18, 2010, Wolfstein was served by
7  publication in accordance with the Court's order. (Dkt. 23.) Wolfstein failed to
8  answer, or otherwise respond, to the Third Party Complaint. (Bierman-Lytle
9  Decl. ¶ 8.)

10     Lincoln filed requests for entry of default against Viteck and Wolfstein, and
11  on December 14, 2009, and on April 13, 2010, the Clerk of this Court entered
12  default against Viteck and Wolfstein, respectively. (Dkts. 13, 16, 34, 35.)

13     To date, Lincoln has not received any response to the Third Party Complaint
14  from the Third-Party Defendants and they have not otherwise appeared in this
15  action. (Bierman-Lytle Decl. ¶ 9.)

16  **III.   ARGUMENT**
17     **A.   The Entry of Judgment Is Appropriate**
18     Rule 55(a) of the Federal Rules of Civil Procedure provides that when a party
19  against whom a judgment for affirmative relief is sought has failed to plead or
20  otherwise defend, the clerk shall enter the party's default. As set forth above,
21  Lincoln has properly requested and the Court Clerk entered Third-Party Defendants'
22  default. (Dkts. 16 and 35.) Third-Party Defendants are not infants or incompetent
23
24  _____
    [2] As a courtesy copy, Lincoln sent Third-Party Plaintiff's Notice of Ex Parte Application and Ex
25  Parte Application to Serve Third-Party Defendant Wolfstein by Publication and to Extend the
    Time to Complete Service of Process and all supporting declarations filed therewith on February
26  11, 2010 to Wolfstein's last known email address, but did not receive any response. (Bierman-
    Lytle Decl. ¶ 10, Exh. 5.)
27
28

1 | persons, and the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply to
2 | Third-Party Defendants. (Bierman-Lytle Decl. ¶¶ 11 and 12.) Lincoln has
3 | attempted to serve copies of these papers on Third-Party Defendants. (Bierman-
4 | Lytle Decl. ¶ 13, Exh. 6.) Thus, all prerequisites to entry of a default judgment have
5 | been satisfied.

### B.    The Factual Allegations of the Complaint Are Deemed Conclusively Established

To establish breach of contract, Lincoln must establish the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 70 Cal.Rptr.3d 667 (2008).

To establish fraud, Lincoln must show (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage. *Cole v. Asurion Corp.*, 2010 WL 1640889 (C.D. Cal. April 19, 2010); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App. 4th 798, 806-07, 66 Cal.Rptr.3d 543 (2007).

To support a claim for negligent misrepresentation, Lincoln must establish (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. *StreamCast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345 *12 (C.D. Cal. May 2, 2006).

Upon the entry of default, a defendant's liability is conclusively established and all factual allegations of a complaint, except those relating to the amount of damages, are assumed to be true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Because default has been entered into against Third-Party

-7-

NOTICE OF MOTION AND MOTION OF THIRD-PARTY PLAINTIFF LINCOLN PROVISION INC. USA FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS

1  Defendants, the following factual allegations in the Third Party Complaint that
2  establish Third-Party Defendants' liability are deemed true and conclusively
3  established:

4  •  In January 2009, Lincoln and Third-Party Defendants entered into a
5  contract wherein Viteck and Wolfstein agreed to sell to Lincoln 20
6  loads of "choice" grade short ribs at $1.05 per pound and to release the
7  loads upon payment by Lincoln;

8  •  In order to induce Lincoln to enter into the contract and to make
9  payment under the contract, Third-Party Defendants made
10  misrepresentations that they would release the Beef Ribs upon the first
11  payment and that the Beef Ribs were of certain quality.  At the time
12  they made these statements, Third-Party Defendants knew or should
13  have known that these statements were false and that they had no
14  reason to believe they were true;

15  •  In reasonable reliance upon the Third-Party Defendants' fraudulent
16  promises and negligent misrepresentations, Lincoln entered into the
17  contract with Third-Party Defendants and entered into a transaction to
18  resell the Beef Ribs to its customer Million;

19  •  Although Viteck and Wolfstein, individually, and as an agent or
20  representative of Viteck, promised to provide the Beef Ribs to Lincoln,
21  Third-Party Defendants had no intention of performing that promise;

22  •  Despite their representations that they would sell the Beef Ribs to
23  Lincoln, Third-Party Defendants intended to sell the Beef Ribs for a
24  higher price directly to Lincoln's customer Million, who Third-Party
25  Defendants knew due to their misconduct, would have a sudden and
26  urgent need for supply;

27

28

1       •    On January 23, 2009, Lincoln performed its obligations under the

2            contract by making its payment of $429,000 to Third-Party Defendants;

3       •    Third-Party Defendants breached the contract by refusing to release the

4            Beef Ribs to Lincoln;

5       •    Third-Party Defendants' conduct directly and proximately resulted in

6            the transactions between Million and Lincoln failing and this action

7            being filed by Million against Lincoln;

8       •    Because of Third-Party Defendants' negligent misrepresentations and

9            fraudulent promises, Lincoln suffered significant damages when Third-

10           Party Defendants refused to provide the Beef Ribs to Lincoln.

11 Because Lincoln's Third Party Complaint contains well-pled charges of

12 Third-Party Defendants' breach of contract, fraud and negligent misrepresentation,

13 and Third-Party Defendants have failed to provide any defense, Lincoln is entitled

14 to a favorable liability determination on its claims and recovery of damages as

15 requested.

16     **C.**    <u>**Lincoln is Entitled to Damages Under the California Uniform**</u>

17            <u>**Commercial Code**</u>

18 Because the contract between Lincoln and Third-Party Defendants involved

19 the sale of goods, it is governed by Article 2 of the California Uniform Commercial

20 Code. *See* Cal. U. Com. Code §§ 2102 and 2105.

21 Under the California Uniform Commercial Code, as damages for nondelivery

22 or repudiation by the seller, Lincoln is entitled to recover the difference between the

23 market price and contract price of the Beef Ribs, consequential damages, and

24 incidental damages.  *See* Cal. U. Com. Code §2713.[3]

25

26 [3] In addition, Section 1787 of the California Civil Code provides that the measure of damages in a

27 case of wrongful refusal to deliver goods where there is an available market for the goods in

(footnote continued)

28 1388-1001  126908.1          -9-

### 1.    Lincoln Is Entitled to Recover Difference between Market Price and Contract Price

When awarding damages under California Uniform Commercial Code Section 2713(1), courts look at the difference between the market price at the time when the buyer learned of the breach and the contract price, less expenses saved in consequence of the seller's breach.  The contract price for the sale of Beef Ribs from Third-Party Defendants to Lincoln was $1.05 per pound for 800,000 pounds. (Bierman-Lytle Decl. ¶ 2, Exh. 1.)  As testified in a deposition in this action by Million's principal, S.B. Wong, the market price of Beef Ribs at the approximate time of nondelivery was up to $1.75 per pound.  (Bierman-Lytle Decl. ¶ 14, Exh. 7; Wong Decl. ¶ 2, Exh. 1.)  Because Million introduced the evidence of market price through discovery, at its principal's deposition in this case, and as part of Rule 16 disclosure in this case, there was sufficient determination and notice of the market price.  Cal. U. Com. Code § 2723(3).  Lincoln did not save any expenses in consequence of Third-Party Defendant's breach.  (Shenson Decl. ¶ 7.)

Accordingly, Lincoln is entitled to the difference between the market price of $1.75 and the contract price of $1.05 per pound, at a total sum of $560,000.

### 2.    Lincoln Is Entitled to Recover Incidental Damages

Incidental damages under Section 2715(1) of the California Uniform Commercial Code resulting from the seller's breach include expenses reasonably incurred in inspection, any commercially reasonable charges, and any other reasonable expense incident to the delay or other breach.

---

question is in the absence of special circumstances showing proximate damages of a greater amount, "the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver." Cal. Civ. Code § 1787(2) and (3).

1   Here, Lincoln incurred at least $275.91 in expenses in connection with

2   traveling to inspect the Beef Ribs. (Shenson Decl. ¶ 5, Exh. 1.)

3   ### 3.   Lincoln Is Entitled to Consequential Damages

4   Consequential damages include lost resale profits, lost opportunities, and loss

5   of good will. *See R.B. Matthews, Inc. v. Transamerica Trans-Services, Inc.* 945

6   F.2d 269, 275 (9th Cir. 1991); *North American Chemical Co. v. Superior Court*, 59

7   Cal.App.4th 764, 777 n. 8, 69 Cal.Rptr.2d 466 (1997); *see also Milgard Tempering,*

8   *Inc. v. Selas Corp. of America*, 902 F.2d 703, 710-711 (9th Cir. 1990). Furthermore,

9   consequential damages can include the amount of the buyer's potential liability to its

10   customer in a resale situation. *See Green Wood Industrial Co. v. Development*

11   *Group, Inc.*, 156 Cal.App.4th 766, 777, 67 Cal.Rptr.3d 624 (2007).

12   In order to recover consequential damages, the buyer must demonstrate that it

13   actually covered or reasonably tried to cover and failed. Cal. U. Com. Code §

14   2715(2)(a); *see also, R.B. Matthews, Inc.*, 945 F.2d at 275. In connection with this

15   analysis, the court may also consider whether the breach occurred too late to permit

16   the buyer time to cover, in which case, the buyer can then recover its consequential

17   damages. *Id.* at 275.

18   It is undisputed that despite its diligence, Lincoln was unable to locate

19   sufficient supply of the Beef Ribs in a timely manner to reasonably cover. (Shenson

20   Decl. ¶ 8.) Therefore, Lincoln is entitled to consequential damages in the form of

21   (1) the amount Lincoln owed Million under the settlement agreement, (2) lost profits

22   from not being able to sell the Beef Ribs to Million, and (3) anticipated lost

23   prospective profits from the ceased business with Million and loss of good will.

24   ### 4.   Lincoln is Entitled to Recover Monies Owed To Million

25   In a resale context, a buyer can recover the amount of its potential liability to

26   its customer as consequential damages if the buyer can demonstrate that it will

27   suffer the damage with reasonable certainty and would and could pay the liability.

28

-11-

1   *Green Wood Industrial Co.*, 156 Cal.App.4th at 777-778; *see also, House Grain Co.*
2   *v. Finerman & Sons*, 116 Cal.App.2d 485, 494, 495-496, fn. 4, 253 P.2d 1034
3   (1953) (buyer is entitled to recover the amount of liability to third party or such
4   actual payment as the buyer may have reasonably made in good faith in satisfaction
5   and discharge of his liability to the third party).

6       As set forth above, Third-Party Defendants knew that Lincoln was intending
7   to resell the Beef Ribs to Million. (Shenson Decl. ¶ 4.) Therefore, liability to
8   Million resulting from the failed meat transaction was a loss directly and naturally
9   resulting in the ordinary course of events from the Third Party Defendants' breach
10  of contract.

11      Indeed, directly as a result of Third-Party Defendants' breach, Lincoln
12  became liable and was forced to pay Million the sum of $125,000 to settle Million's
13  claims in this action. (Bierman-Lytle Decl. ¶ 6.) As required under the Settlement
14  Agreement entered into in April 2010 between Million and Lincoln, Lincoln is
15  obligated to, and plans to, pay, $125,000 to Million by June 13, 2010. (*Id.*; Shenson
16  Decl. ¶ 9.) Therefore, because Lincoln has demonstrated with reasonable certainty
17  that it would and could pay the liability, it is entitled to recover the $125,000
18  payable to Million.

19          **5.   Lincoln is Entitled to Lost Profits**

20      Based on the communications between Lincoln and Wolfstein before the
21  formation of the parties' contract, Third-Party Defendants were aware that Lincoln
22  intended to purchase the Beef Ribs to resell to its customer. (Shenson Decl. ¶ 4.)
23  Because Lincoln had agreed to sell the Beef Ribs to Million for $1.10 per pound,
24  Lincoln lost approximately $40,000 in actual lost profits from this failed transaction.
25  (Bierman-Lytle Decl. ¶ 3. Exh. 2.) Lincoln is entitled to recover these lost profits as
26  / / /
27  / / /
28  1388-1001   126908.1

-12-

NOTICE OF MOTION AND MOTION OF THIRD-PARTY PLAINTIFF LINCOLN PROVISION INC. USA
FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS

1  consequential damages under Section 2715(2) of the California Uniform

2  Commercial Code.[4]

3      **6.      Lincoln is Entitled to Damages for Anticipated Lost Profits,**

4              **Lost Opportunity, and Loss of Good Will**

5      Consequential damages also include recovery for lost profits, lost opportunity

6  and loss of good will.  *See R.B. Matthews,* at 275; *Milgard Tempering, Inc.,* 902

7  F.2d at 710-711; *North American Chemical Co.,* 59 Cal.App.4th at 777 n. 8.[5]

8      Plaintiff need only demonstrate its anticipated lost profits due to lost

9  opportunity or good will with reasonable certainty, with a reasonable basis of

10  calculation, and with a reasonable anticipation that the damages would result due to

11  the breach.  *See Western Emulsions, Inc. v. BASF Corp.,* 2007 WL 1839718 *8-9

12  (C.D. Cal. January 19, 2007) (anticipated lost profits are recoverable); *Kerner v.*

13  *Hughes Tool Co.,* 56 Cal.App.3d 924, 937, 128 Cal.Rptr. 839 (1976) (loss of

14  anticipated profits need not be established with certainty; it is sufficient to show a

15  reasonable probability that profits would have been earned except for the breach of

16  contract); *see also, Rogerson Aircraft Corp. v. Fairchild Industries, Inc.,* 632

17

18  _____

    [4]  Lincoln is also entitled to lost profits as general damages.  General damages are often

19  characterized as those that flow directly and necessarily from a breach of contract, or that are a
    natural result of a breach. *Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*

20  34 Cal.4th 960, 968, 102 P.3d 257 (2004).  General damages are often said to be within the
    contemplation of the parties because their occurrence is sufficiently predictable at the time of

21  contracting. *Lewis Jorge,* 34 Cal.4th at 971-972; *see also, Morello v. Growers Grape Products*

22  *Ass'n,* 82 Cal.App.2d 365, 469, 186 P.2d 463 (1947) (loss of profits on resale would seem to be a
    "loss directly and naturally resulting in the ordinary course of events, from the seller's breach of

23  contract" when applying the general measure of damages for breach of contract pursuant to Civil
    Code § 3300); *see Newhall Land & Farming Co. v. Hogue-Kellogg Co.,* 56 Cal.App. 90, 95-96,

24  204 P. 562 (1922).
    [5]  Moreover, contract law permits recovery for "all the detriment proximately caused [from the

25  breach], or which, in the ordinary course of things, would be likely to result therefrom."  Cal. Civ.

26  Code § 3300.

27

28  1388-1001  126908.1                        -13-

1  F.Supp. 1494 (C.D. Cal. 1986) (court found a reasonable basis for calculating

2  plaintiff's lost profits with certainty by a reasonable percentage of profit on the gross

3  revenues); *Natural Soda Products Co. v. City of Los Angeles*, 23 Cal.2d 193, 199-

4  200, 143 P.2d 12 (1943) (damages for loss of prospective profits awarded as

5  plaintiff's probable gross receipts could be estimated from its prior sales and costs).

6       As a direct and proximate result of Third-Party Defendants' breach, Lincoln

7  lost all opportunity to continue its meat business with Million, which Million and

8  Lincoln had anticipated would continue for many years had it not been for the failed

9  meat transaction. (Wong Decl. ¶¶ 3, 7, Exh. 2.) Despite their previous good

10 working relationship, because Third Party Defendants failed to provide Lincoln with

11 the Beef Ribs which in turn left Million without the expected meat supply, Million

12 stopped buying meat from Lincoln and filed this instant lawsuit against Lincoln to

13 recover the lost monies and business to its downstream buyers. (Wong Decl. ¶¶ 3,

14 8.) Based on the communications between the parties and Third Party Defendants'

15 attempt to usurp the business opportunity, it is reasonable to infer that Third-Party

16 Defendants anticipated that failure to provide the Beef Ribs to Lincoln as promised

17 would result in Lincoln's loss of good will, opportunity, and future business with

18 Million.[6]

19      Million is one of the largest importers of meat in Hong Kong and purchases a

20 significant portion of its meat from United States suppliers.[7] (Wong Decl. ¶¶ 4-5,

21 Exhs. 3-4.) Lincoln began its business relationship with Million in 2008 and in that

22 _____

23 [6] Third-Party Defendants were aware that Lincoln had a meat sale business relationship with
   Million and was planning to resell the Beef Ribs to Million. (Shenson Decl. ¶ 4.) Third Party

24 Defendants attempted to usurp this relationship by breaching the agreement with Lincoln and
   offering to sell the meat directly to Million for a higher price. (Third Party Complaint ¶ 17.)

25 [7] On average, Million imports 250-300 standard size 40 foot containers of meat a month. (Wong

26 Decl. ¶ 5, Exh. 4.) Million's annual turnover for 2008 was approximately $256 million. (*Id.* ¶ 6,
   Exh. 5.)

27

28                                 -14-

1  year, earned approximately $125,000 in sales to Million.  (Shenson Decl. ¶ 10.)  To

2  continue its strong relationship with Million and to promote a long term business

3  relationship, at the end of 2008 and early 2009, Lincoln had ramped up its business

4  negotiations and offerings to Million and made a number of accommodations.

5  (Shenson Decl. ¶ 11.)  As a result of Lincoln's investment and development of its

6  relationship with Million, Million had a good working relationship with Lincoln and

7  had intended to continue to purchase meat from Lincoln in the coming years.

8  (Wong Decl. ¶ 7.)

9       Had it not been for Third-Party Defendants' breach of contract and the

10  resulting lawsuit, which directly resulted in the termination of business relationship

11  between Million and Lincoln, it was reasonably certain that Lincoln would have

12  made at least $2 million in annual sales to Million.  (Wong Decl. ¶¶ 3, 7, Exh. 2;

13  Shenson Decl. ¶ 12.)  The gross profits from such sales would have been $140,000

14  per year, based upon Lincoln's average gross profit of 7% on its meat sales.

15  (Shenson Decl. ¶ 12.)

16       This calculation is a conservative estimate and is based upon Lincoln's actual

17  past sales to Million, reasonable probable projection of future sales to Million based

18  upon Million's meat business, and comparable sales to a meat company in Asia,

19  which has about a third of the volume of meat sales of Million.  (Shenson Decl. ¶¶

20  12, 14, Exhs. 2, 4.)

21       In the first year of Lincoln's business with Million in 2008, Lincoln made

22  approximately $125,000 in sales to Million.  (Shenson Decl. ¶ 10.)  In just the first

23  two weeks of January 2009 before the failed Beef Ribs transaction, Lincoln

24  confirmed approximately $57,000 in sales to Million.  (Shenson Decl. ¶ 13.)

25       Lincoln's annual sales to another Asia-based company, which compared to

26  Million, makes approximately a third of the volume of meat purchases in the United

27

28    1388-1001  126908.1

-15-

1  States as Million, was approximately $3 million in 2008, $4 million in 2009, and

2  annualized $6 million in 2010.  (Shenson Decl. ¶¶ 14, 16, Exhs. 2, 4.)

3      As evidenced by Lincoln's established sales with comparable companies and

4  Million's testimony and affidavit of its intent to continue to purchase meat from

5  Lincoln, it was reasonably certain that but for Third-Party Defendants' misconduct,

6  by the end of 2009, Lincoln's meat sales to Million would have been approximately

7  $2 million per year (one third of Lincoln's annual sales to another Asia-based

8  company that does much less business than Million) and would have achieved a

9  greater number in sales each year thereafter.  Therefore, it is reasonable to infer, at a

10 minimum, that Lincoln lost $140,000 per year for three years of anticipated lost

11 profits, lost opportunity and good will, as calculated by expected sales of at least $2

12 million per year to Million and based upon Lincoln's 7% gross profit margin of its

13 meat sales.  Accordingly, Lincoln is entitled to recover damages in the amount of

14 $420,000 in anticipated lost gross profits, lost opportunity and lost good will caused

15 by Third-Party Defendants' breach.

16    **D.    In the Alternative, Lincoln is Entitled to Damages for Fraud and**

17         **Negligent Misrepresentation**

18      Under California law, a plaintiff may recover for fraud in "the amount which

19 will compensate for all the detriment proximately caused thereby, whether it could

20 have been anticipated or not."  *See* Cal. Civ.Code §§ 3333; *3A Entertainment Ltd. v.*

21 *Constant Entertainment, Inc.*, 2009 WL 248261*5 (N.D. Cal. January 30, 2009).

22      Lincoln is entitled to damages for fraud and negligent misrepresentations

23 from each Viteck and Wolfstein.[8]  As set forth in the Third Party Complaint,

24

_____

25 [8] An agent (Wolfstein in this case) or employee is always liable for his own tort irrespective of

26 whether the principal is liable and regardless of whether the agent acts according to his principal's
   directions.  Cal. Civ.Code § 2343(3); *see La Flower v. Merrill*, 28 F.2d 784, 787 (D.C. Cal. 1928)

27 (everyone is liable for his torts, and an agent or servant is no exception); *Leung v. Sumitomo Corp.*
   (footnote continued)

28 1388-1001  126908.1                    -16-

1  Wolfstein and Viteck, by and through its agent Wolfstein, fraudulently represented
2  that they would provide the Beef Ribs to Lincoln and fraudulently induced Lincoln
3  to enter into a contract.  Lincoln reasonably relied upon these statements and as a
4  direct and proximate result of Third-Party Defendants' fraudulent and reckless
5  conduct, Lincoln sustained the following damages: (1) lost past profits of $40,000;
6  (2) costs of $275.91; (3) lost prospective profits of $420,000; and (4) monies owed
7  to Million of $125,000 for settling this action.
8       Accordingly, as an alternative to its claim of breach of contract damages, as
9  set forth above, the Court should enter judgment against Viteck and Wolfstein in an
10  amount that will compensate Lincoln for all the detriment proximately caused
11  thereby, which constitutes a total sum of $585,275.91.
12       **E.     Lincoln is Entitled to Prejudgment Interest**
13       California Civil Code Section 3287(b) provides that every person who is
14  entitled under any judgment for breach of contract where the claim was unliquidated
15  may recover interest from a date prior to the entry of judgment as the court may in
16  its discretion fix but in no event earlier than the date the action was filed.  Section
17  3289 further provides that interest is calculated at ten percent per annum. Cal. Civ.
18  Code § 3289(b).
19       Therefore, Lincoln is entitled to receive prejudgment interest from October
20  22, 2009, the date the Third Party Complaint was filed, until judgment, at the
21  amount of ten percent, or $299 per day.
22       **F.     Lincoln is Entitled to Post-Judgment Interest**
23       Post-judgment interest is generally governed by federal law and is calculated
24  from the date of the entry of the judgment, at a rate equal to the weekly average one-
25  _____
26  *of America*, 2010 WL 816642 (N.D. Cal. March 9, 2010) (even if defendant not party to contract,
27  still liable in tort for plaintiff's fraud claims).
28  1388 1001  126908.1                              -17-

1  year constant maturity Treasury yield, as published by the Board of Governors of
2  the Federal Reserve System, for the calendar week preceding the date of the
3  judgment. 28 U.S.C. § 1961(a).  Accordingly, Lincoln is entitled to post-judgment
4  interest at the rate calculated at the date of judgment until the judgment is paid.

5      **G.**    **Lincoln is Entitled to Costs**

6      Under California law, the court may award costs at its discretion.  Cal. Civ.
7  Proc. § 1033.  Lincoln has incurred $16,145.05 in costs in connection with this
8  action.  (Shenson Decl. ¶ 15, Exh. 3.)

9      **H.**    **Lincoln's Recovery of Damages, Interest and Costs**

10      Therefore, Third-Party Defendants Viteck and Wolfstein are liable for the
11  total sum of 1,145,275.41 as follows[9]:

12     • Difference between market price and contract price of $560,000;

13     • Incidental damages of travel costs to inspect the Beef Ribs of $275.91;

14     • Consequential damages of the amount Lincoln is obligated to pay Million
15        of $125,000 to settle this matter;

16     • Consequential damages of lost profits from the resale of the Beef Ribs of
17        $40,000;

18     • Consequential damages of anticipated lost profits of $420,000;

19     • Prejudgment interest of $299 per day since the filing of the Third Party
20        Complaint on October 22, 2009 to the date of judgment;

21     • Post-judgment interest to be determined at the date of judgment; and

22     • Costs of $16,145.05.

23  _____

24  [9]  Lincoln is entitled to damages from both Viteck and Wolfstein.  There is no reasonable basis for
25  apportioning the damages in this case.  *See* Restatement (Second) of Torts §433A(1)
26  (apportionment is appropriate when "there is a reasonable basis for determining the contribution of each cause to a single harm").

28   -18-

IV.   **CONCLUSION**

For the foregoing reasons, Lincoln respectfully requests that this Court grant its request for entry of default judgment against Third-Party Defendants Philip Wolfstein and Viteck International Corp., and award $1,145,275.91 in damages, prejudgment interest of $299 per day, $16,145.05 in costs, and post-judgment interest at the rate calculated at the date of judgment and until the judgment is paid.

Dated: May 17, 2010                     Respectfully submitted:

                                        **ZUBER & TAILLIEU LLP**
                                        YURI MIKULKA
                                        LINDEN BIERMAN-LYTLE


                                        By: _____
                                            Attorneys for Defendant Lincoln Provision,
                                            Inc. USA

1388-1001  126908.1                     -19-

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3      At the time of service, I was over 18 years of age and **not a party to this
action**. I am employed in the County of Los Angeles, State of California. My
4 business address is 10866 Wilshire Boulevard, Suite 300, Los Angeles, California
90024.

5
      On May 17, 2010, I served true copies of the following document(s)
6 described as **NOTICE OF MOTION AND MOTION OF THIRD-PARTY
PLAINTIFF LINCOLN PROVISION INC. USA FOR DEFAULT
7 JUDGMENT AGAINST THIRD-PARTY DEFENDANTS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested
8 parties in this action as follows:

9  | Michael A. Brewer | Viteck International Corporation |
Hornberger & Brewer, LLP | 21031 Ventura Boulevard
10 | 444 South Flower Street | Suite 424
Suite 3010 | Woodland Hills, CA 91364
11 | Los Angeles, CA 90071-2901
T: 213.733.1655
12 | F: 213.488.1255 | Seongsu Kim
*Attorney for Plaintiff, MILLION (FAR* | Agent for Service of Process
13 | *EAST) LTD.* | 5517 Wellesley Drive
Calabasas, CA 91302

14

15 **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
to the persons at the addresses listed in the Service List and placed the envelope for
16 collection and mailing, following our ordinary business practices. I am readily
familiar with Zuber & Taillieu LLP's practice for collecting and processing
17 correspondence for mailing. On the same day that the correspondence is placed for
collection and mailing, it is deposited in the ordinary course of business with the
18 United States Postal Service, in a sealed envelope with postage fully prepaid.

19 **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
document(s) to be sent from e-mail address olucido@ztllp.com to **Philip Wolfstein**
20 **at** wolfintl@aol.com. I did not receive, within a reasonable time after the
transmission, any electronic message or other indication that the transmission was
21 unsuccessful.

22      I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
23 of a member of the bar of this Court at whose direction the service was made.

24      Executed on May 17, 2010, at Los Angeles, California.

25

26                                        _____
27                                        Olivia T Lucido

28

1388-1001 / 126908.1